IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GATEWAY TOWNE CENTRE, LLC,

            Plaintiff,


v.                          //   CIVIL ACTION NO. 1:09CV127
                                     (Judge Keeley)


FIRST UNITED BANK AND TRUST,

            Defendant.


**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]**

**I.   INTRODUCTION**

Pending before the Court are cross-motions for summary judgment filed by the plaintiff, Gateway Towne Centre, LLC ("Gateway"), and the defendant, First United Bank and Trust ("First United").  The question presented by Gateway's motion is whether First United must purchase a parcel of land known as Lot V(b).  First United's motion seeks to recover both "liquidated damages" for Gateway's late delivery of a "pad ready" site and also additional construction costs and engineering fees it incurred as a consequence of Gateway's wrongful conveyance of a right-of-way to a public utility.  For the reasons that follow, the Court **GRANTS-IN-PART** Gateway's motion for summary judgment (dkt. no. 70), and **DENIES** First United's motion for partial summary judgment (dkt.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

no. 72), concluding that First United may not pursue its counterclaim for liquidated damages.

## II.  FACTUAL BACKGROUND

This case arises from a contract for the sale of real property at the Suncrest Towne Centre Development in Morgantown, West Virginia ("Suncrest"), and the construction by First United of a branch bank at that site.  First United is a Maryland-chartered bank with its principal office in Oakland, Maryland.  Gateway is a commercial real estate developer.

### A.    The Purchase Agreement

On March 16, 2004, Gateway and First United entered a Purchase and Option Agreement ("Purchase Agreement") under which First United agreed to purchase a parcel of land known as Lot V.  For convenience, the parties subdivided Lot V into a 1.19 acre parcel, Lot V(a), and a smaller parcel of then-unknown dimensions, Lot V(b).  First United also received an option to purchase a 1.12 acre parcel, Lot U ("the Optioned Property").[1]  See Purchase Agreement

---

[1]    The purchase price for Lot V(a) was $1,000,000.00 per acre. The purchase price for Lot V(b) was $22.96 per square foot. The purchase price for Lot U was $1,250,000.00 per acre.  First United ultimately paid $1,190,000.00 for Lot V(a), and exercised its option to purchase Lot U for $1,400,000.00.  To date, First United has not tendered payment for Lot V(b).

2

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

### MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

(dkt. no. 71-1).  Closing on the lots was originally scheduled for May 28, 2004; by agreement, however, the parties extended that date briefly and closed on June 25, 2004.

Under the Purchase Agreement, Gateway initially agreed to deliver a pad ready site by October 1, 2005, a deadline the parties later extended to January 1, 2006.  See First Modification and Extension to Purchase Agreement (dkt. no. 73-4).  The Purchase Agreement defines the term "pad ready" as follows:

> Pad Ready shall mean that a specific parcel of real estate has been brought to a grade, compacted to a ninety-five percent (95%) standard proctor, utilities of adequate size have been extended to the property line of the parcel and the road providing access has been constructed to final grade with stone surface in place.

Id. at ¶ I(k).  It also contains a "liquidated damages" clause requiring Gateway to pay $15,000.00 "per month or fractional part thereof" should it fail to deliver a pad ready site by the January 1, 2006 deadline.  Id. at ¶ VI(1).

B.   **The Escrow Agreement and the Closing on Lots V(a) and U**

The closing on Lots V(a) and U took place as scheduled on June 25, 2004.  The parties, however, chose not to close on Lot

3

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]**

V(b), agreeing instead to determine its dimensions at a later time.[2]

At the closing, First United paid Gateway $723,391.50 in net proceeds and option money, and $181,820.00 for transfer stamps, attorney fees, release fees, brokerage fees, and real estate commission escrow fees. It also paid the remaining $1,685,726.00 of the purchase price into an escrow account. See Escrow Agreement (dkt. no. 71-1).

The parties' Escrow Agreement authorized escrow agents, Stephen Shuman and George Armistead, to disburse funds from the Escrow Account to Gateway upon its completion of certain milestones, as follows:

> One-third (1/3rd) of the Development Funds upon the Real Property being brought to grade and the completion being at a ninety-five percent (95%) standard proctor or better;
>
> One-third (1/3rd) of the Development Funds upon all utilities being constructed to the property line of the Real Property at such locations as are practicable and reasonable for [First United] to connect thereto, such

---

[2] At the time the parties executed the Purchase Agreement, they did not know whether the West Virginia Department of Transportation, Division of Highways ("WVDOH"), would need portions of the area under Lot V(b) for the entranceway to the Suncrest Development. Accordingly, they elected to determine the precise dimensions of Lot V(b) at a later date.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

> utilities shall include but not [sic] limited to sanitary sewer, water, natural gas telephone, TV cable, electric and storm water disposal system; [and]
>
> One-third (1/3rd) of the Development Funds upon the installation or placement of the binder coat of asphalt upon the entranceway from the Stewartstown Road to lots as shown upon the Plans of [Gateway's] Project.

Id.

To receive these disbursements, Gateway had to provide the escrow agents and First United with written certification after completing each milestone. Id. First United then had fourteen calendar days to "raise any issues or objections to the terms contained in said certification and to the corresponding distribution of funds." Id. The parties' agreement contemplated that all objections would be resolved through arbitration. If First United did not object within the 14-day time frame, the escrow agents disbursed funds to Gateway without further direction. During the course of its relationship with Gateway, First United never objected to Gateway's certifications regarding completion of its milestones, and the escrow agents disbursed funds to Gateway as contemplated.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST          1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

## C. The Installation of the Waterline

Gateway hired Triad Engineering, Inc. ("Triad") and Kanawha Stone Company, Inc. ("Kanawha Stone") to develop a pad ready site for First United on Lot V(a). See Biafora Dep. 15.  On April 12, 2005, however, David Biafora ("Biafora"), a principal of Gateway, granted the Morgantown Utility Board ("MUB") a right-of-way and a 448 foot utility easement across Lot V(a) without first obtaining First United's consent. [3]

After securing the right-of-way, MUB installed a 16-inch ductile iron waterline across Lot V(a) but mislaid it approximately 30 feet outside its assigned right-of-way. It is unclear precisely when MUB installed the waterline, although an authorization form indicates that the project was complete and in service by September 29, 2005.  See MUB Authorization for Expenditure for Property Additions and Improvements (dkt. no. 73-12).

Gateway paid MUB $363,555.34 to install the waterline but denies that it oversaw its installation or authorized MUB to lay the line outside its assigned right-of-way.  See Biafora Dep. 44-

---

[3] Despite the fact that Gateway had conveyed Lots V(a) and U to First United on June 25, 2004, Biafora testified during his deposition that he believed he had the right to grant the right-of-way on April 12, 2005 because the site needed access to water.  See Biafora Dep. 43.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

45, 55. Notwithstanding Biafora's wrongful conveyance, First United later recognized MUB's right-of-way on February 27, 2009.

**D.   Gateway's Obligation to Deliver a "Pad Ready" Site**

Despite the agreed extension of the delivery date for a pad ready site on Lot V(a), Gateway failed to deliver the site on time. In fact, several more months elapsed before Karen L. Krabill ("Krabill"), a Triad Engineer, sent a letter dated June 5, 2006, to Lloyd Decker ("Decker"), First United's facilities manager, advising that Lots U and V had been compacted with "non-pyritic fill material," could be considered pad ready, and were "suitable for building construction." See Letter from Karen L. Krabill to Lloyd A. Decker (June 5, 2006) (dkt. no. 74-7).

Even after that, however, Triad did not officially certify the lots as "pad ready . . . complete with utilities" until October 27, 2006, ten months after the agreed delivery time. See Letter from Karen L. Krabill to David Biafora (Oct. 27, 2006) (dkt. no. 73-8). Following that, Gateway certified its completion of the third milestone, and, without objection from First United, the escrow agents disbursed the final payment from the Escrow Account to Gateway on November 2, 2006.

7

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

E.   First United's Construction of a Branch Bank on Lot V(a)

Although Gateway's delivery of a pad ready site was ten months late under the terms of the parties' Purchase Agreement, nearly two (2) more years elapsed before First United notified the Federal Deposit Insurance Corporation ("FDIC") of its intent to locate a new branch bank at Suncrest. Although, as a state-chartered bank and member of the FDIC, First United was required to secure approval from the FDIC to open a new branch bank location, 12 U.S.C. 1828(d)(1), it never attempted to do so until June 5, 2008. See Letter from Tonya K. Sturm, Vice President and Director of Finance, First United Bank & Trust, to Elisa Maislin, Regional Director, Federal Deposit Insurance Corporation, dated June 5, 2008, stating First United's intent to operate a new branch at the Suncrest location effective March 31, 2009 (dkt. no. 77-1). After receiving First United's application, the FDIC promptly approved construction effective July 1, 2008. See Letter from Patricia A.M. Ford, FDIC Field Supervisor, to Board of Directors, First United Bank & Trust (June 17, 2008) (dkt. no. 74-9). First United then broke ground on Lot V(a) on July 28, 2008.

Early in August 2008, however, first United became aware, through Commercial Builders, the general contractor hired to

8

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

construct the bank building, that MUB had installed a 16-inch iron ductile waterline beneath the surface of Lot V(a), and that, due to the placement of that waterline, the grade of the lot did not allow adequate clearance for the building. See Letter from Cory L. Kourtsis to Lloyd Decker (Aug. 14, 2008) (dkt. no. 73-15). After receiving this information, First United ordered Commercial Builders to halt construction on August 14, 2008. Id.

Following that, on August 27, 2008, Bob Hare, a Triad engineer and First United's agent, met with representatives of MUB to discuss the feasibility of either relocating the waterline or revising the grade of Lot V. See Letter from Bob Hare, Triad Engineering, to Lloyd Decker (Aug. 29, 2008). After considering its options, First United decided to raise Lot V's elevation by one (1) foot, see email from Lloyd Decker to Cory Kourtsis (Sept. 19, 2008) (dkt. no. 73-17), a change that added unanticipated construction costs and engineering fees to the project.

Also during this time, on September 15, 2008, Gateway presented First United with a survey establishing that the area of Lot V(b) was 3,730.56 square feet. Based on the Purchase Agreement's set price of $22.96 per square foot, it demanded

9

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]**

$85,653.66 in payment for Lot V(b). First United, however, refused to tender payment to Gateway, and still has not done so.

### III.   PROCEDURAL HISTORY

Gateway's complaint seeks a declaration that, pursuant to the Purchase Agreement, First United is obligated to purchase Lot V(b).[4]  First United's answer includes counterclaims seeking to recover both liquidated damages for Gateway's failure to deliver a pad ready site by January 1, 2006, and costs and fees incurred to adjust the site grade of Lot V(a). First United also seeks unspecified damages for the alleged diminution in the value of Lot U caused by Gateway.

### IV.   LEGAL STANDARD

Under Fed. R. Civ. P. 56, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, a court reviews all the evidence in the light

---

[4]  Gateway has withdrawn a claim for negligence. See Pl.'s Resp. in Opp. to Def.'s M.S.J. at 15 n.34 (dkt. no. 74).

10

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

most favorable to the nonmoving party. Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (on a motion for
summary judgment, "[t]he evidence of nonmovant is to be believed,
and all justifiable inferences must be drawn in his favor."
(internal quotation mark omitted)).

## V.   DISCUSSION

### A.   Gateway's Declaratory Judgment Claim

The Declaratory Judgment Act authorizes district courts to
"declare the rights and other legal relations of any interested
party seeking such declaration." 28 U.S.C. § 2201. In the Fourth
Circuit, "a declaratory judgment action is appropriate 'when the
judgment will serve a useful purpose in clarifying and settling the
legal relations in issue, and . . . when it will terminate and
afford relief from the uncertainty, insecurity, and controversy
giving rise to the proceeding.'" Centennial Life Ins. Co. v.
Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas. & Sur.
Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation
omitted)). Here, Gateway seeks a declaration that First United is
obligated to purchase Lot V(b) and that its failure to do so
constitutes a breach of contract.

11

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

First United has consistently maintained that its obligation to purchase Lot V(b) was contingent on Gateway's satisfaction of three conditions precedent in the Purchase Agreement: 1) the WVDOH's determination of the extent of its need for the area comprising Lot V(b); 2) Gateway's preparation of a "Plat of Survey" identifying the residue of Lot V(b); and 3) Gateway's delivery of a deed conveying the property to First United. <u>See</u> Purchase Agreement at 5-7, ¶ IV(b). Throughout this litigation, it has always acknowledged Gateway's satisfaction of the first two conditions precedent and conceded its obligation to purchase Lot V(b) upon Gateway's delivery of a deed for that lot. <u>See</u> Def.'s Resp. Pl.'s M.S.J. at 4 (dkt. no. 75).

Gateway finally delivered a deed on March 14, 2011, following which, during a hearing on June 1, 2011, First United acknowledged that Gateway had satisfied the third condition precedent in the Purchase Agreement. Tellingly, however, it asserted a right to postpone payment for Lot V(b) under the doctrines of setoff or recoupment.

Given First United's acknowledgment of its obligation to purchase Lot V(b), under the terms of the Purchase Agreement it became obligated to purchase the lot for $85,653.66 within twenty

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST       1:09CV127

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]**

days of receiving "the proposed Deed and Plat of Survey" from
Gateway. <u>See</u> Purchase Agreement at 7, ¶ IV(b). Nevertheless, First
United may be entitled to a setoff of some or all of this amount
should it prevail on its counterclaim for damages resulting from
Gateway's wrongful conveyance of a right-of-way to MUB, as well as
for any diminution in the value of Lot U resulting from that
conveyance. <u>See</u> <u>FDIC v. Marine Midland Realty Credit Corp.</u>, 17
F.3d 715, 722 (4th Cir. 1994) (holding that "[s]etoff is a
counterclaim arising from an independent claim that the defendant
has against the plaintiff."). Thus, the total amount that First
United ultimately may owe Gateway for Lot V(b) is uncertain at this
time and cannot be determined on dispositive motion.

**B.    First United's Counterclaim for Liquidated Damages**

First United seeks liquidated damages of $150,000.00. This
claim rests entirely on Gateway's undisputed late delivery of Lot
V(a) in pad ready condition. Arguing that this delay was a clear
breach of the parties' Purchase Agreement, First United claims
entitlement to $15,000.00 in damages for each of the ten months
during which Gateway failed to deliver a pad ready site on Lot
V(a).

13

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

Gateway does not dispute that its late delivery of a pad ready site violated the terms of the Purchase Agreement but argues that First United waived its claim to liquidated damages by failing to object to the final disbursement from the Escrow Account. Alternatively, Gateway contends that the liquidated damages clause in the Purchase Agreement constitutes an unenforceable penalty under West Virginia law because First United suffered no actual damages as a result of its late delivery of the pad ready site. The Court will address each of these arguments in turn.

## 1.   First United Did Not Waive its Claim to Liquidated Damages

In support of its contention that First United waived its claim to liquidated damages, Gateway relies on the language in paragraph 4 of the Escrow Agreement requiring First United to object within fourteen days if it disputed Gateway's milestone certification.  See Escrow Agreement at ¶ 4 (dkt. no. 71-1).  As explained earlier, absent timely objection from First United, the escrow agents simply disbursed funds to Gateway.

While it is undisputed that First United never objected to any of Gateway's milestone certifications, those milestones included only 1) bringing the lots to grade and properly compacting them, 2) constructing utilities to the property lines of the lots, and 3)

14

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

installing a binder coat of asphalt on the entranceway to Stewartsdown Road. Notably, late delivery of a pad ready site was never subject to objection under the Escrow Agreement. Thus, Gateway's argument is unpersuasive.

**2.    Enforcement of the "Liquidated Damages" Provision Would Impose a Penalty in this Case**

The more difficult question is whether enforcement of the liquidated damages clause of the Purchase Agreement would impose a penalty. Although Gateway has not counter-moved for summary judgment on First United's claim for liquidated damages, it has argued as a defense to that claim that First United suffered no actual damages due to the late delivery of a pad ready site on Lot V(a). Because that defense could potentially dispose of First United's claim for liquidated damages, the Court may address the matter <u>sua</u> <u>sponte</u> on summary judgment. <u>See</u> Fed. R. Civ. P. 56(e), and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986) (recognizing a district court's inherent power to enter summary judgment <u>sua</u> <u>sponte</u> upon giving the losing party notice of its obligation "to come forward with all of [it]s evidence.").

In support of its counterclaim, First United asserts that $15,000.00 per month for each of the ten months Gateway failed to deliver a pad ready site represents the parties' fair and

15

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST       1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

reasonable estimate of the probable loss attributable to Gateway's delay. It also contends that the late delivery "necessarily" delayed its notice to the FDIC for approval to construct a new branch bank. Affidavits filed by First United supporting its argument assert that Gateway's delay also caused it to incur substantially higher construction costs.

Gateway argues that an award of liquidated damages would constitute an unenforceable penalty under the facts in this case. It points out that First United inexplicably delayed seeking FDIC approval to locate a branch bank at Suncrest for almost two years following Gateway's delivery of a pad ready site in October 2006. In further support, it notes that First United never broke ground on Lot V(a) until July 2008.

Under West Virginia law, parties may contract for liquidated damages 1) when damages would be difficult to ascertain "by any known or safe rule," or 2) when the "nature of the case and tenor of the agreement" establish that the parties calculated the liquidated damages through "actual fair estimate and adjustment." Syl. Pt. 3, Huntington Eye Associates, Inc. v. LoCascio, 553 S.E.2d 773, 774 (W. Va. 2001) (quoting Syl. Pt. 3, Wheeling Clinic v. Van Pelt, 453 S.E.2d 603 (1994)); see also Charleston Lumber Co. v.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

Friedman, 61 S.E. 815, 816 (W. Va. 1908).  A liquidated damages clause, however, may not be enforced when a party's "actual damages" are "grossly disproportionate" to the "liquidated damages" it seeks to recover.  See W. Va. Pub. Employees Ins. Bd. v. Blue Cross Hospital Service Incorporated, 328 S.E.2d 356, 359 (W. Va. 1985); see also Restatement (Second) of Contracts § 356 cmt. b. (describing a scenario in which "no loss at all has occurred" as an "extreme case" in which "a provision fixing a substantial sum as damages is unenforceable.").

A reviewing court must look retrospectively to determine whether a disputed liquidated damages clause would impose a penalty if enforced.  See Guiliano v. Cleo, Inc., 995 S.W.2d 88, 99 (Tenn. 1999) (recognizing West Virginia as a jurisdiction employing a "retrospective approach" to evaluating liquidated damages clauses that requires courts to "not only analyze the estimation of damages at the time of contract formation, but also address whether the stipulated sum reasonably relates to the amount of actual damages caused by the breach.").  In other words, a liquidated damages clause might be reasonable and enforceable in theory, but penal and unenforceable in reality.  See Wetzel County Savings and Loan Company v. Stern Bros., Inc., 195 S.E.2d 732, 737-38 (W. Va. 1973);

17

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

Horn v. Bowen, 67 S.E.2d 737, 739 (W. Va. 1951); accord Restatement (Second) of Contracts § 356 cmt. a (1981) (providing that "[t]he central objective behind the system of contract remedies is compensatory, not punitive").

Significantly, in West Virginia the party seeking to enforce a liquidated damages clause bears the burden of proving that such damages are not a penalty.  See Blue Cross, 328 S.E.2d at 359. Therefore, it is for First United to establish by a preponderance of the evidence that the liquidated damages provision it seeks to enforce is not a penalty.  Id.

There are several reasons why First United cannot meet its burden. At the outset, it has not established that liquidated damages of $15,000.00 per month reflect a reasonable approximation of the probable loss attributable to Gateway's delay.  First United has not disclosed the methodology by which the parties determined this figure, nor does the Purchase Agreement provide a basis for the calculation. Further, it has offered no evidence that Gateway's delay caused it to suffer any actual damages. Its briefs merely recite the bare argument that Gateway delivered a pad ready site ten months late, "necessarily" delaying the construction of its branch bank, and that, but for this delay, it would have opened its

18

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

Suncrest branch ten months earlier than it did. Accordingly, it concludes that it was prevented from earning revenues earlier and also incurred higher construction costs.

In support of its argument, First United submitted declarations and affidavits from Karen Krabill, a retired Triad engineer, George C. Harne ("Harne"), an architect, and Lloyd Decker, First United's facilities manager. These sworn statements, however, fail to explain why Gateway's ten-month late delivery of a pad ready site in October 2006 delayed construction at the Suncrest location for almost two years.

In her declaration, for example, Krabill candidly admits that she was not personally involved in the decision about when to begin construction of the branch bank. She merely opines that, in her experience, Gateway's delay would have "necessarily delayed all other aspects of the construction process" and notes that "construction costs rise each year." Krabill Dec. at 2, ¶ 6 (dkt. no. 88-1).

Harne's declaration is similarly speculative and vague. Although he was not "involved in First United's internal decision-making process," he "believe[s]" Gateway's late delivery of a pad ready site "necessarily delayed the design and construction of the

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST     1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

branch bank by roughly ten months" and that it is "more likely than not that, but for Gateway's delay, First United would have started the design and construction process much earlier." Harne Dec. at 2, ¶ 6.  He also opines that "construction costs tend to rise over time."  Id. at 2, ¶ 7.  Finally, Decker's affidavit establishes, unsurprisingly, that, in 2008, the construction costs for First United's Suncrest branch bank were higher than those for a structurally identical building First United built in 2005. Decker Aff. at 2, ¶ 5.

First United's ultimate argument, that Gateway's delay prevented it from providing earlier notice to the FDIC of its intent to locate a new branch bank at Suncrest, fails for want of any evidence that First United actually intended to give such notice prior to June 2008.  Very telling is its total silence about what construction plans were thwarted or delayed between January 1, 2006, the delivery date under the Purchase Agreement, and October 27, 2006, the date when Gateway actually delivered the pad ready site.  It also fails to explain how such late delivery necessarily delayed First United's notice to the FDIC until June, 2008, and its construction until July 28, 2008.  First United

20

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]**

offers no evidence at all of actual damages, much less of a nexus between Gateway's delay and such damages.

Despite numerous opportunities to do so, First United has failed to establish how Gateway's ten-month delay proximately caused it to incur actual damages.  Absent such evidence, it would be mere speculation to conclude that First United planned to notify the FDIC of its intent to construct a new branch bank at Suncrest on or around January 1, 2006, or sometime shortly thereafter, and incurred actual damages due to Gateway's ten-month delay.  The declarations of Krabill, Harne, and Decker shed no light at all on this issue; absent such evidence, the Court is left to speculate as to why First United delayed FDIC notice and construction until the summer of 2008. [5]  Thus, even when viewed in the light most favorable to First United, there is no evidence on which a reasonable factfinder could rely to connect Gateway's ten-month

---

[5]  First United provides no evidence that it actually took any steps to obtain approval to locate a branch bank at Suncrest between October 26, 2006 and June 2008. At bottom, it asks this Court to assume not only that it was prepared to seek FDIC approval on January 1, 2006, but also that Gateway's ten-month delay actually prevented it from notifying the FDIC until June, 2008. Without evidence that it actually had planned to send notice to the FDIC in January, 2006, and about what actually caused it to delay providing such notice until June, 2008, First United's motion invites rank speculation.

21

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST       1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

delay in delivering a pad ready site on Lot V(a) to actual damages occasioned by that delay. Enforcement of the liquidated damages clause in the Purchase Agreement would therefore necessarily impose a penalty under West Virginia law. See Syl. Pt. 4, LoCascio, 553 S.E.2d at 775.

## C. First United's Counterclaim for Construction Costs and Engineering Fees

First United also seeks summary judgment on its claim to recover the additional construction costs and engineering fees it incurred to accommodate MUB's waterline. It is undisputed that after Biafora, Gateway's principal, wrongly conveyed an unauthorized right-of-way to MUB, that utility mislaid the waterline approximately 30 feet outside its right-of-way, facts not discovered by First United until August 2008, when its building contractor advised that the location of the waterline created a problem with the grade of Lot V(a). Confronted with that situation, First United revised its construction plans, raised Lot V(a)'s grade, and incurred an additional $79,345.00 in construction costs and $3,816.75 in engineering fees.

First United's motion focuses on Gateway's wrongful conveyance of the right-of-way to MUB. It argues that the conveyance breached

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

paragraph XIII(a)(v) of the Purchase Agreement, which provides in

pertinent part:

> [B]eginning on the date of [the Purchase]
> Agreement and continuing until the earlier of
> the Closing or the termination of this
> Agreement, [Gateway] shall not . . . (v) grant
> or transfer any easement, right-of-way, and/or
> license on, under, over, across, or through
> the Real Property or Optioned Property, or any
> part or portion thereof[.]

Purchase Agreement at ¶ XIII(a)(v).

Any damages First United may recover for this breach

constitute "special damages" that, unlike general damages, are of

the type that "do not always follow a breach of this particular

character."  24 Williston on Contracts § 64:12 (4th ed. 2010).

Under West Virginia law, a party may recover special damages to the

extent they "'may fairly and reasonably be considered as arising

naturally . . . from the breach of the contract itself,'" or to the

extent the parties contemplated such damages as a probable

consequence of the contract's breach at the time of its formation.

Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro, 214 S.E.2d

823, 827 (W. Va. 1975) (quoting 22 Am.Jur.2d, Damages § 56 (1965)

(discussing the holding of Hadley v. Baxendale, 9 Exch. 341, 156

Eng. Reprint 145 (1854))).  In other words, the damages sought must

flow directly from the contract breach.  See Bowen, 67 S.E.2d at

23

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST       1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

739.  A plaintiff must prove these damages "with reasonable certainty." Sellaro, 214 S.E.2d at 828 (citing State ex rel. Mundy v. Andrews, 19 S.E. 385 (W. Va. 1894)).   Gateway does not dispute that Biafora lacked the authority to convey a right-of-way to MUB, but contends that First United implicitly consented to the conveyance.  Failing that, it argues that it was MUB's misplacement of the waterline that actually damaged First United, and, in any case, First United failed to adequately mitigate its damages.

As a threshold matter, there can be no dispute that Gateway's wrongful conveyance of the right-of-way to MUB was the cause-in-fact of First United's additional construction costs and engineering fees.  The primary question therefore is whether First United's damages arose naturally as a consequence of Gateway's breach. Sellaro, 214 S.E.2d at 828; Horn, 67 S.E.2d at 739.  Based on the unambiguous prohibition on any grant of easements or rights-of-way after the closing date in the Purchase Agreement, damages resulting from First United's need to adjust its construction plans due to the placement of the utility line were the direct and probable consequence of Biafora's unauthorized conveyance and, thus, a natural consequence of Gateway's breach. Nevertheless, as discussed below, questions of material fact exist as to whether

24

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

First United adequately mitigated its damages when it adjusted its site grade.

### 1.    First United Did Not Implicitly Consent to Gateway's Conveyance

In order to deliver a pad ready site on Lot V(a), Gateway needed to extend "utilities of adequate size" to the property lines of Lots V and U.  See Purchase Agreement at ¶ I(k).  Based on this requirement, Gateway now contends that, as a matter of necessity, First United implicitly consented to its conveyance of a right-of-way to MUB.

While the Purchase Agreement required Gateway to ensure that utilities extended to the property line, it explicitly prohibited Gateway from unilaterally granting easements or rights-of-way.  See Purchase Agreement at ¶ XIII(a).  Thus, the Purchase Agreement contemplated that Gateway would obtain First United's consent and authorization before granting necessary utility easements or rights-of-way to third parties.  Because there is no evidence that First United ever granted Gateway authority to convey a right-of-way to MUB, Gateway's "implicit consent" argument fails.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST       1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

### 2.   MUB's Installation of the Waterline Outside of the Right-of-Way Does Not Discharge Gateway's Liability

Gateway also argues that it is not liable for the additional construction costs and engineering fees First United incurred due to MUB's installation of the waterline.  See Biafora Dep. 95, 96. This fact alone, however, does not discharge Gateway's liability; Biafora's wrongful conveyance of a right-of-way in the first place clearly breached the Purchase Agreement and makes Gateway responsible for damages resulting from MUB's erroneous installation of the waterline.  This argument therefore is without merit.

### 3.   Triad Did Not Serve as First United's Agent During MUB's Installation of the Waterline

Gateway further contends that it is not liable for damages because Triad actually acted as First United's agent during MUB's installation of the waterline. This argument is belied by Biafora's deposition testimony that Gateway hired Triad to serve as its site engineer to ensure that the site was pad ready.  See Biafora Dep. 18.  The record also suggests that First United never hired Triad as its engineer until sometime in 2008, well after installation of the waterline in 2005.

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST      1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

### 4. Whether First United Properly Mitigated its Damages is a Question of Fact Precluding Summary Judgment

Finally, Gateway argues that, even if it is liable to First United for additional construction costs and engineering fees, First United is not entitled to summary judgment because there are genuine questions of material fact as to whether it properly mitigated its damages. Gateway contends that First United could have raised the block level of the bank's structure, a significantly cheaper alternative to raising the grade of Lot V. In support of its argument, Gateway relies on the testimony of both Biafora and Kourtsis, the Vice-President of Commercial Builders, that First United could have mitigated its damages more efficiently and inexpensively by installing courses of block instead of raising the grade of the site. See Biafora Dep. 89; Kourstis Dep. 62-63, 79.

Under West Virginia law, a non-breaching party has a duty to mitigate its damages. See Middle-West Concrete Forming and Equipment Co. v. General Ins. Co., 267 S.E.2d 742, 747 n.8 (W. Va. 1980) (quoting jury instructions with approval); Martin v. Board of Ed. of Lincoln County, 199 S.E. 887, 889 (W. Va. 1938) (citing Restatement (First) of Contracts § 336 cmt. 1(d) (1932)). A breaching party, thus, may raise a non-breaching party's failure to

27

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST     1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

mitigate his damages as an affirmative defense by establishing that
the non-breaching party failed to diligently "minimize his
damages." Martin, 199 S.E. at 889.

While Gateway's breach of the Purchase Agreement's provisions
regarding conveyance of an easement and right-of-way to MUB makes
it liable to First United for damages flowing from that breach,
whether First United adequately mitigated its damages after
learning of the breach is a question of fact precluding summary
judgment. When the evidence is viewed in the light most favorable
to Gateway, the nonmoving party, the Court concludes that a
reasonable jury could determine that First United failed to
reasonably mitigate its damages when, in lieu of installing courses
of block, it raised the grade of Lot V. Ultimately, it will be for
a jury to determine whether First United could have mitigated its
damages by using a more cost-effective approach.

VI.  CONCLUSION

For the reasons discussed, the Court **GRANTS-IN-PART** Gateway's
motion for summary judgment (dkt. no. 70), and **DENIES** First
United's motion for partial summary judgment (dkt. no. 72),
concluding that First United may not pursue its counterclaim for
liquidated damages. Specifically, it:

28

GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST        1:09CV127

MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]

- **GRANTS-IN-PART** Gateway's motion for summary judgment on its declaratory judgment claim, and **DECLARES** that First United is obligated to purchase Lot V(b) from Gateway. Under the doctrines of setoff and recoupment, however, it concludes that the precise amount First United must pay Gateway for the lot cannot be determined until after a jury resolves what amount First United may recover on its counterclaims for additional construction costs and engineering fees, and for Gateway's alleged diminution of the value of Lot U;

- **DENIES** First United's motion for partial summary judgment on its counterclaim for liquidated damages because such damages constitute an unenforceable penalty; and

- **DENIES** First United's motion for partial summary judgment on its counterclaim for construction costs and engineering fees.

It is so **ORDERED**.

**GATEWAY TOWNE CENTRE V. FIRST UNITED BANK AND TRUST       1:09CV127**

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 70],AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 72]**

The Court directs the Clerk to transmit copies of this Order

to counsel of record.

DATED: September 2, 2011

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE